UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

AARON WEITZMAN, et al.,

Plaintiffs,

v.

CITY OF SEATTLE, et al.,

Defendants.

CASE NO. C14-1041 MJP

ORDER ON MOTIONS FOR SUMMARY JUDGMENT

THIS MATTER comes before the Court on Cross-Motions for Summary Judgment filed by the Parties. (Dkt. Nos. 32, 37.) Having reviewed the Motions, the response briefs, (Dkt. Nos. 40, 41), the reply briefs, (Dkt. No. 43), and all related papers, the Court GRANTS Defendants' Motion for Summary Judgment, (Dkt. No. 32), and DENIES Plaintiffs' Motion for Summary Judgment, (Dkt. No. 37).[1]

//

[1] On February 25, 2016, Plaintiffs filed additional materials in support of their Motion. (Dkt. Nos. 46–48.) Because these materials were filed belatedly and without leave of Court, the Court does not consider them.

**Background**

On January 21, 2011, Mr. Weitzman and his wife Jennifer Weitzman were separated and shared custody of their two-year old daughter Z.W. (Dkt. No. 33-1 at 26, 30–31.) Prior to that date, Mr. Weitzman and Plaintiff Leon Blatt had been in California on vacation with Z.W. (Id. at 79.) Mr. Weitzman and Ms. Weitzman had agreed that Z.W. would spend a few days with Ms. Weitzman when they returned from California. (Id. at 87–88.) However, when he returned to Seattle the evening of January 21, 2011, Mr. Weitzman told Ms. Weitzman he would not drop Z.W. off that evening. (Id. at 88.) Mr. Weitzman alleges Ms. Weitzman then became upset and threatened to harm herself, Z.W. and Mr. Weitzman. (Id. at 88–89.) After Mr. Weitzman got off of the phone with Ms. Weitzman, Mr. Weitzman and Mr. Blatt drove Z.W. to a nearby daycare and dropped her off. (Id. at 90.) Mr. Weitzman then placed a call to the Seattle Police Department ("SPD") to report Ms. Weitzman's alleged threats. (Id. at 92.) Ms. Weitzman also made a call to the King County Sheriff's Office. (Dkt. No. 36 at 1.)

Defendants Michelle Heitman and Marcus Inouye, two SPD officers, were dispatched to investigate Mr. Weitzman's call. (Dkt. No. 34 at 1–2.) When they arrived at Mr. Weitzman's and Mr. Blatt's apartment, Defendants Heitman and Inouye asked Mr. Weitzman questions about the substance of his 911 call. (Dkt. No. 33-1 at 99.) Mr. Blatt was present during this conversation. (Dkt. No. 39 at 3.) Defendant Heitman states in her declaration the Mr. Weitzman appeared nervous and unstable during this conversation. (Dkt. No. 34 at 2.) Defendant Heitman also asked Mr. Blatt questions about Mr. Weitzman's statements. (Id. at 3.) She states in her declaration that Mr. Blatt's answers appeared to be inconsistent with Mr. Weitzman's. (Id.)

Defendant Heitman then contacted the King County Sheriff's Office and spoke with Officer Joshua Sweeney. (Id.) Officer Sweeney had been dispatched to respond to Ms. Weitzman's call. (Dkt. No. 36 at 1.) Based on his investigation, Officer Sweeney concluded

there was no evidence Ms. Weitzman was suicidal or a threat to others. (Id. at 2.) He also concluded Ms. Weitzman's account was likely more credible than Mr. Weitzman's. (Id.) Officer Sweeney relayed the substance of his investigation to Defendant Heitman. (Dkt. No. 34 at 3.) Around this time, Ms. Weitzman arrived at the scene. (Id.) Defendant Heitman also spoke to Ms. Weitzman. (Id.) After speaking to Officer Sweeney and Ms. Weitzman, Defendant Heitman decided to conduct a welfare check on Z.W. (Id. at 4.)

Defendant Heitman asked Mr. Weitzman where Z.W. was, but he refused to provide the address of her daycare. (Dkt. No. 33-1 at 99.) Defendant Heitman states in her declaration that she became increasingly concerned for Z.W.'s safety and welfare based on Mr. Weitzman's behavior, because he appeared paranoid and unstable. (Dkt. No. 34 at 4.) She also states that she asked Mr. Weitzman if she could interview him outside of the front of her police vehicle so that his statement could be recorded, and that Mr. Weitzman agreed to be interviewed. (Id.) Mr. Weitzman contends Defendants Heitman and Inouye asked him to come downstairs so that they could provide him with a copy of their report, and then ordered him to sit on the hood of Defendant Heitman's car and questioned him. (Dkt. No. 33-1 at 99–102.) Defendant Heitman asked Mr. Blatt to stand a few feet away from Mr. Weitzman during the interview. (Id. at 102.) Defendant Heitman again asked Mr. Weitzman for the address of Z.W.'s daycare, but Mr. Weitzman refused to provide it. (Dkt. No. 33-1 at 103–04.) Defendant Heitman states in her declaration that, during this interview, she noted discrepancies in Mr. Weitzman's account, and became increasingly suspicious of Mr. Weitzman and Mr. Blatt. (Dkt. No. 34 at 4.)

While Defendant Heitman was interviewing Mr. Weitzman, Mr. Blatt left the scene. (Dkt. No. 39 at 6.) Mr. Blatt testified at his deposition that he picked Z.W. up from daycare and drove to a friend's house. (Dkt. No. 33-2 at 19.) Mr. Weitzman states in his declaration that he

told Mr. Blatt to keep Z.W. away from the police, and to take her to an attorney in the morning. (Dkt. No. 38 at 5.) During this time, Defendants tried to call Mr. Blatt, but were unable to reach him at the number he had provided. (Dkt. No. 34 at 5.) Defendants contend that, over the next few hours, Mr. Weitzman attempted to reach Mr. Blatt by a variety of means, at times with prompting from Defendants. (Id.) Mr. Weitzman states in his declaration that Defendants ordered him to make calls to Mr. Blatt. (Dkt. No. 38 at 7.) Defendant Heitman states in her declaration that, at one point, Mr. Blatt called and, while on speaker phone, she informed him of the seriousness of the situation and requested that he return with Z.W. (Dkt. No. 34 at 5.) Mr. Blatt states in his declaration that he could not hear what Defendant Heitman was saying. (Dkt. No. 39 at 7.)

Mr. Weitzman testified at his deposition that, at various times after Mr. Blatt left the scene, Defendants ordered Mr. Weitzman to return to his apartment, ordered him to sit in the lobby of his apartment building, and that Defendant Jerry Harris took his house and car keys. (Dkt. No. 33-1 at 106–114.) Mr. Weitzman further testified at his deposition that Defendants returned his keys once Mr. Blatt was arrested. (Id. at 119.) Mr. Weitzman was never handcuffed, taken to a police precinct, or taken to jail. (Id. at 119–120.) When Mr. Blatt eventually returned with Z.W., Defendants arrested him for obstructing a public officer, driving without a license, and failing to properly transfer his vehicle title. (Dkt. No. 34 at 6.) Defendant Inouye placed handcuffs on Mr. Blatt. (Dkt. No. 39 at 8.) Mr. Blatt states in his declaration that the handcuffs were so tight that they cut into his wrists and that he asked Defendant Inouye to loosen the handcuffs, but he refused. (Id.)

Defendant Heitman transferred Z.W. to Ms. Weitzman's custody. (Dkt. No. 34 at 6.) She states in her declaration that she made the decision "based on [her] overall investigation of

the case" including her "personal observations of Mr. Weitzman's and Mr. Blatt's demeanor, as compared to the demeanor of Ms. Weitzman, who [she] found to be calm, stable and credible." (Id.) Defendant Heitman also made the recommendation that further investigation be conducted into Mr. Blatt's actions to determine whether they constituted child endangerment. (Id. at 7.) Mr. Blatt was later prosecuted on the charges he was arrested for, and proceeded to trial. (Dkt. No. 33–3.) The charges were ultimately dismissed by the court. (Dkt. No. 33-2 at 24.)

On March 27, 2014, Plaintiffs commenced this suit against Defendants asserting a variety of federal and state law claims arising out of the January 21, 2011 investigation and Mr. Blatt's arrest and prosecution. (Dkt. No. 37-1.) The Parties have filed Cross-Motions for Summary Judgment. (Dkt. Nos. 32, 37.) The Court first considers Defendants' Motion, and then Plaintiff's Motion.

## Discussion

### I. Legal Standard

Summary judgment is proper where "the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In assessing whether a party has met its burden, the underlying evidence must be viewed in the light most favorable to the non-moving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

### II. Defendants' Motion for Summary Judgment

#### A. Claims by Z.W.

In their response to Defendants' Motion for Summary Judgment, Plaintiffs appear to assert claims under the Ninth and Tenth Amendments to the United States Constitution on behalf

of Z.W. (Dkt. No. 40 at 2.) The Court will not consider these claims for two reasons. First, Z.W. was dismissed from this lawsuit by a stipulation signed by all Parties and entered by the Court on June 22, 2015. (Dkt. No. 26.) Accordingly, Plaintiffs cannot assert claims on behalf of Z.W. Second, Plaintiffs did not assert claims under the Ninth and Tenth Amendments in their complaint. (Dkt. No. 37-1.) Therefore, these claims are not properly before the Court. See Klein v. Boeing Co., 847 F. Supp. 838, 844 (W.D. Wash. 1994).

**B. Criminal Law Claims**

Plaintiffs assert several claims that arise under federal and state criminal law. (Dkt. No. 37-1 at 13.) As Defendants note, these statutes do not provide a private right of action by individuals. (Dkt. No. 32 at 6–7.) Therefore, the Court GRANTS Defendants' Motion for Summary Judgment as to Plaintiffs' federal and state law perjury claims, claims under RCW 42.20.040, and claims under RCW 42.20.050.

**C. Fourth Amendment Claims**

Plaintiffs assert Fourth Amendment claims based on the seizure of their persons. (Dkt. 37–1 at 10–12.) Defendants argue the Court should dismiss these claims with prejudice because: (1) Mr. Blatt's arrest was supported by probable cause; (2) Mr. Weitzman was never arrested and was, at most, subject to an investigatory detention supported by reasonable suspicion; and (3) even if Plaintiffs can establish a violation of their rights under the Fourth Amendment, Defendants are entitled to qualified immunity. (Dkt. No. 32 at 7–13.)

**1. Mr. Blatt's Claims**

"A claim for unlawful arrest is cognizable under §1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." Dubner v. City & Cty. of San Francisco, 266 F.3d 959, 964 (9th Cir. 2001) (citations omitted). Therefore, probable cause is a complete defense to a claim for false arrest. Id. "Probable cause to arrest

exists when officers have knowledge or reasonably trustworthy information sufficient to lead a person of reasonable caution to believe that an offense has been or is being committed by the person being arrested." United States v. Lopez, 482 F.3d 1067, 1072 (9th Cir. 2007).

As discussed above, Mr. Blatt was arrested on three charges, including obstructing a public officer. (Dkt. No. 34 at 5–6.) Defendants offer evidence that Defendant Heitman asked Mr. Blatt to return Z.W., but that Mr. Blatt refused to do so. (Dkt. No. 34 at 5.) Mr. Blatt's contention that he did not hear what Defendant Heitman was saying on the phone does not create an issue of material fact as to whether Defendants had a reasonable belief that Mr. Blatt disobeyed their order to return Z.W. (Dkt. No. 39 at 7.) Because no reasonable jury could find Defendants' lacked probable cause to arrest Mr. Blatt for obstructing a public officer, the Court GRANTS Defendants' Motion for Summary Judgment as to Mr. Blatt's Fourth Amendment false arrest claims.

**2. Mr. Weitzman's Claims**

An investigatory detention is permitted when an officer has reasonable suspicion to believe criminal activity "may be afoot." United States v. Arvizu, 534 U.S. 266, 273 (2002) (citations and quotations omitted). In determining whether reasonable suspicion exists, courts look at the "totality of the circumstances" to determine whether an officer possesses "a particularized and objective basis for suspecting criminal wrongdoing." Id. There is no "bright line rule for determining when an investigatory stop crosses the line and becomes an arrest." Allen v. City of Los Angeles, 66 F.3d 1052, 1056 (9th Cir. 1995) (citations and quotations omitted). A court determining whether a seizure is a temporary detention or an arrest must consider the totality of the circumstances. Id.

Viewing the facts in the light most favorable to Mr. Weitzman, the Court finds no reasonable jury could find, based on the totality of the circumstances, that Mr. Weitzman was subject to more than an investigatory detention supported by reasonable suspicion. Both Mr. Weitzman's demeanor and his repeated refusals to disclose Z.W.'s location provided reasonable suspicion to detain Mr. Weitzman for questioning. As discussed above, Mr. Weitzman was never arrested, taken to a police precinct, or taken to jail. Mr. Weitzman contends he did not feel he could leave during the investigation, particularly after Defendants seized his keys. (Dkt. No. 40 at 6.) However, because Defendants could only communicate with Mr. Blatt through Mr. Weitzman and were concerned for Z.W.'s safety, the Court finds Defendants' methods were reasonable and did not evolve into an arrest. Based on the foregoing, the Court GRANTS Defendants' Motion for Summary Judgment as to Mr. Weitzman's Fourth Amendment claims.

**3. Qualified Immunity**

Qualified immunity shields a federal or state official from suit "when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." Brosseau v. Haugen, 543 U.S. 194, 198 (2004). Officials are shielded from money damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was "clearly established" at the time of the challenged conduct. Ashcroft v. al-Kidd, 131 S. Ct. 2074, 2080 (2011). A right is clearly established when "it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Saucier v. Katz, 533 U.S. 194, 202 (2001). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." Ashcroft, 131 S. Ct. at 2085.

The Court has already found Defendants did not seize Plaintiffs in violation of the Fourth Amendment. Further, even if Defendants arrested Mr. Blatt without probable cause or seized Mr. Weitzman without reasonable suspicion, the Court finds a reasonable jury could not escape the conclusion that reasonable officers in Defendants' position could have believed their conduct was lawful under the specific facts of this case. Therefore, the Court also GRANTS Defendants' Motion for Summary Judgment as to Plaintiffs' Fourth Amendment claims based on the seizure of their persons against the individual Defendants on the grounds that the individual Defendants are entitled to qualified immunity.

**D. Excessive Force Claims**

Defendants move for summary judgment on Mr. Blatt's Fourth Amendment excessive force claims on the grounds that: (1) Mr. Blatt cannot assert an excessive force claim against any Defendant other than Defendant Inouye; and (2) Mr. Blatt cannot point to any objective medical evidence supporting his claims. (Dkt. No. 32 at 13–15.)

Excessively tight handcuffing can constitute a Fourth Amendment violation. See e.g. Wall v. Cnty. of Orange, 364 F.3d 1107, 1112 (9th Cir. 2004). However, allegations of painful handcuffing, without evidence of a more permanent injury, are insufficient to support an excessive force claim. See Arpin v. Santa Clara Transp. Agency, 261 F.3d 912, 922 (9th Cir. 2001) (affirming summary dismissal of excessive-force claim because plaintiff did not submit any medical records showing she suffered actual injury as a result of being handcuffed).

Here, Plaintiffs point to no medical evidence to support Mr. Blatt's claims of injury. (Dkt. Nos. 37, 40.) Indeed, Mr. Blatt testified at his deposition that he never sought medical treatment for any alleged injuries associated with his arrest. (Dkt. No. 33-2 at 28.) Because allegations of injury absent medical evidence are insufficient to establish excessive force, the

Court GRANTS Defendants' Motion for Summary Judgment as to Mr. Blatt's excessive force claims. Arpin, 261 F.3d at 922.

**E. Equal Protection and Due Process Claims**

Defendants argue the Court should dismiss Plaintiffs' federal equal protection and due process claims with prejudice because: (1) Plaintiffs cannot show they were treated differently from other similarly situated individuals or that any of the individual Defendants acted with discriminatory intent; (2) there is no substantive due process right to be free from prosecution without probable cause and an allegation that Defendants failed to protect Mr. Weitzman cannot support a substantive due process claim; (3) Plaintiffs did not assert procedural due process claims in their complaint; and (4) Defendants' decision to transfer Z.W. to Ms. Weitzman does not shock the conscience. (Dkt. No. 32 at 15–17); (Dkt. No. 43 at 4–8.)

**1. Equal Protection Claims**

To establish a violation of the Equal Protection Clause, a plaintiff must show, among other things, that she was treated differently from other similarly situated persons. See City of Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432, 439 (1985). Here, Plaintiffs point to no evidence that shows issues of material fact exist as to whether Plaintiffs were treated differently from other similarly situated persons. (Dkt. Nos. 37, 40.) Accordingly, the Court GRANTS Defendants' Motion for Summary Judgment as to Plaintiffs' equal protection claims.

**2. Due Process Claims**

"Substantive due process protects individuals from arbitrary deprivation of their liberty by government." Brittain v. Hansen, 451 F.3d 982, 991 (9th Cir. 2006). To establish a substantive due process claim, a plaintiff must show both a deprivation of her liberty and conscience-shocking behavior by the government. Id. Plaintiffs assert substantive due process

claims based on: (1) Defendants' alleged failure to protect Mr. Weitzman; (2) Mr. Blatt's prosecution; and (3) Defendants' decision to transfer Z.W. to Ms. Weitzman's custody. (Dkt. No. 37–1 at 10–11.)

Plaintiffs' substantive due process claims based on Defendants' alleged failure to protect Mr. Weitzman fail because the Constitution does not require the state "to protect the life, liberty, and property of its citizens against invasion by private actors." Shanks v. Dressel, 540 F.3d 1082, 1087 (9th Cir. 2008) (citations and quotations omitted). Likewise, Plaintiffs' substantive due process claims based on Mr. Blatt's prosecution fail because there is no substantive due process right to be free from arrest and prosecution without probable cause. See Albright v. Oliver, 510 U.S. 266, 274–75 (1994). Finally, Plaintiffs' substantive due process claims based on Defendants' decision to transfer Z.W. to Ms. Weitzman fail, because no reasonable jury could find Defendants' actions were "conscience-shocking." Brittain, 451 F.3d at 996. ("We do not require police officers to act as legal experts to avoid violating the Constitution . . .") The Court notes that in their response to Defendants' Motion, Plaintiffs appear to assert claims for procedural due process violations based on Defendants' decision to transfer Z.W. to Ms. Weitzman's custody. (Dkt. No. 40 at 2–4.) However, because Plaintiffs did not plead these claims in their complaint, (Dkt. No. 37-1), the Court will not consider them. Based on the foregoing, the Court GRANTS Defendants' Motion for Summary Judgment as to Plaintiffs' substantive due process claims.

**F. Civil Conspiracy Claims**

Defendants argue the Court should dismiss Plaintiffs' civil conspiracy claims with prejudice because Plaintiffs' have not pled any allegations in support of these claims, and because Plaintiffs cannot show "who conspired against them, whether an agreement was reached

between those individuals, and, if so, what the substance of the agreement was." (Dkt. No. 32 at 17.)

To establish a civil conspiracy claim, a plaintiff "must prove by clear, cogent and convincing evidence that (1) two or more people combined to accomplish an unlawful purpose, or combined to accomplish a lawful purpose by unlawful means; and (2) the conspirators entered into an agreement to accomplish the object of the conspiracy." Wilson v. State, 84 Wn. App. 332, 350–51 (1996). "Mere suspicion or commonality of interests is insufficient to prove a conspiracy." Id.

Plaintiffs' civil conspiracy claims are based on their allegation that Defendants conspired to deprive Mr. Weitzman of the procedural due process protections associated with custody. (Dkt. No. 40 at 5.) However, Plaintiffs point to no evidence that shows Defendants entered into an agreement to deprive Mr. Weitzman of any procedural due process protections. (Dkt. Nos. 37, 40.) Because no reasonable jury could find Defendants entered into an agreement to accomplish an unlawful purpose, the Court GRANTS Defendants' Motion for Summary Judgment as to Plaintiffs' civil conspiracy claims.

**G. Malicious Prosecution Claims**

Defendants move for summary judgment on Plaintiffs' malicious prosecution claims on the grounds that: (1) Mr. Blatt is the only Plaintiff who can assert malicious prosecution claims; (2) Mr. Blatt cannot rebut the presumption that the prosecutor exercised independent judgment in deciding to file criminal charges; (3) Mr. Blatt cannot show lack of probable cause; and (4) Mr. Blatt cannot show malice. (Dkt. No. 32 at 18–19.)

To maintain an action for malicious prosecution under Washington law, a plaintiff must allege and prove the following: (1) that the prosecution claimed to have been malicious was

instituted or continued by the defendant; (2) that there was want of probable cause for the institution or continuation of the prosecution; (3) that the proceedings were instituted or continued through malice; (4) that the proceedings terminated on the merits in favor of the plaintiff, or were abandoned; and (5) that the plaintiff suffered injury or damage as a result of the prosecution. Bender v. City of Seattle, 99 Wash.2d 582, 593 (1983).

Because he was never charged or subject to legal process, Mr. Weitzman's malicious prosecution claims fail. And, because only Defendant Heitman recommended further investigation into Mr. Blatt's actions, Mr. Blatt's malicious prosecution claims against the remaining Defendants fail. With respect to his malicious prosecution claim against Defendant Heitman, the Court finds no reasonable jury could find Defendant Heitman acted with malice. To show malice, Mr. Blatt must demonstrate affirmative acts disclosing some feeling of "bitterness, animosity or vindictiveness towards the [plaintiff]." Moor v. Smith, 89 Wash.2d 932, 943 (1978). Mr. Blatt states in his declaration that Defendant Heitman's report contains "fabrications, obfuscating half-truths, and embellishments . . ." (Dkt. No. 39 at 9.) These conclusory allegations do not show Defendant Heitman recommended further investigation into Mr. Blatt's actions without believing him to be guilty, or that she acted out of hostility or ill-will towards him. Based on the above, the Court GRANTS Defendants' Motion for Summary Judgment as to Plaintiffs' malicious prosecution claims.

**H. Abuse of Process Claims**

Defendants argue the Court should dismiss Plaintiffs' abuse of process claims with prejudice because Plaintiffs can point to no action taken by Defendants after the initiation of legal proceedings against them that could support this claim. (Dkt. No. 32 at 19–20.) "Abuse of process is the misuse or misapplication of the process, after the initiation of the legal proceeding,

for an end other than that which the process was designed to accomplish." Saldivar v. Momah, 145 Wn. App. 365, 388 (2008). "The mere institution of legal proceeding even with a malicious motive does not constitute an abuse of process." Fite v. Lee, 11 Wn. App. 21, 27 (1974). "Thus, there must be an act after filing suit using legal process empowered by that suit to accomplish an end not within the purview of the suit." Batten v. Abrams, 28 Wn. App. 737, 748 (1981). Plaintiffs' abuse of process claims are based on Defendant Heitman's act of submitting her General Offense Report. (Dkt. No. 37-1 at 14.) Because this action was taken before legal proceedings were initiated against Mr. Blatt, and, therefore, cannot form the basis of Plaintiffs' abuse of process claims, the Court GRANTS Defendants' Motion for Summary Judgment as to Plaintiffs' abuse of process claims. Batten, 28 Wn. App. at 748.

**I. Negligent Infliction of Emotional Distress Claims**

Defendants move for summary judgment on Plaintiffs' negligent infliction of emotional distress claims on the grounds that Plaintiffs' claims are based on the intentional actions of Defendants and, therefore, fail as a matter of law. (Dkt. No. 32 at 20.) Here, Plaintiffs' negligent infliction of emotional distress claims are based on Defendants' decision not to arrest and charge Ms. Weitzman. (Dkt. No. 37-1 at 12.) Because a negligent infliction of emotional distress claim cannot be based on an intentional act, the Court GRANTS Defendants' Motion for Summary Judgment as to Plaintiffs' negligent infliction of emotional distress claims. See Nix v. Bauer, No. C05-1329Z, 2007 WL 686506, at *4 (W.D. Wash. Mar. 1, 2007).

**J. Outrage Claims**

Defendants argue the Court should dismiss Plaintiffs' outrage claims with prejudice because, among other things, Plaintiffs cannot show Defendants' conduct was so outrageous in character as to go beyond all possible bounds of decency. (Dkt. No. 32 at 21.) The elements of an intentional infliction of emotional distress claim under Washington law are: (1) that defendant

engaged in extreme and outrageous conduct, (2) that intentionally or recklessly inflicted emotional distress, and (3) that plaintiff suffered severe emotional distress as a result of defendant's conduct. Reid v. Pierce County, 136 Wash.2d 195, 202 (1998). The conduct in question must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Grimsby v. Samson, 85 Wn.2d 52, 59 (1975). The Court finds no reasonable jury could find Defendants' conduct on January 21, 2011 was so outrageous in character as to go beyond all possible bounds of decency. See e.g. Strong v. Terrell, 147 Wash. App. 376, 386 (2008) (summary judgment was proper where plaintiff alleged conduct of screaming and ridiculing insults and indignities over two-year period). Accordingly, the Court GRANTS Defendants' Motion for Summary Judgment as to Plaintiffs' outrage claims.

**K. Municipal Liability Claims**

Plaintiffs assert municipal liability claims based on a theory of failure to train and/or supervise. (Dkt. No. 37-1 at 13.) Defendants argue the Court should dismiss Plaintiffs' municipal liability claims with prejudice because, among other things, Plaintiffs cannot establish that their constitutional rights were violated. (Dkt. No. 32 at 22–25.)

In Monell v. Department of Social Servs., 436 U.S. 658, 691, the Supreme Court held that municipalities are "persons" subject to damages liability under Section 1983 where "actions pursuant to official municipal policy of some nature cause a constitutional tort." As discussed supra, the Court has not found that Defendants violated Plaintiffs' constitutional rights. Because Plaintiffs' Monell claims are not viable without an underlying constitutional violation, the Court GRANTS Defendants' Motion for Summary Judgment as to Plaintiffs' municipal liability claims. See Simmons v. Navajo Cnty. Ariz., 609 F.3d 1011, 1021 (9th Cir. 2010).

**III. Plaintiffs' Motion for Summary Judgment**

Plaintiffs appear to assert the following claims in their Motion for Summary Judgment: (1) federal claims under 42 U.S.C. § 13981; and (2) state law claims for misfeasance and malfeasance. (Dkt. No. 37 at 25–30.) Because these claims were not asserted in Plaintiffs' Complaint, (Dkt. No. 37-1), they are not properly before the Court, and the Court does not consider them. Klein, 847 F. Supp. at 844. And, because the Court has GRANTED Defendants' Motion for Summary Judgment as to all claims properly asserted by Plaintiffs, the Court DENIES Plaintiffs' Motion for Summary Judgment, (Dkt. No. 37).

**Conclusion**

The Court GRANTS Defendants' Motion for Summary Judgment, (Dkt. No. 32), and DENIES Plaintiffs' Motion for Summary Judgment, (Dkt. No. 37).

The clerk is ordered to provide copies of this order to all counsel.

Dated this 4th day of March, 2016.

Marsha J. Pechman
United States District Judge